IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LARRY WELDON TREADWELL and | ) | Case No. 08-61627 |
| CAROLE ELAINE TREADWELL, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| LARRY WELDON TREADWELL and | ) | |
| CAROLE ELAINE TREADWELL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 08-6058 |
| | ) | |
| GLENSTONE LODGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| GLENSTONE LODGE, INC., | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY WELDON TREADWELL and | ) | |
| CAROLE ELAINE TREADWELL, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

**<u>ORDER DIRECTING JUDGMENT IN FAVOR OF
GLENSTONE LODGE, INC. ON REMAND
FROM THE EIGHTH CIRCUIT COURT OF APPEALS</u>**

This matter is before this Court on remand from the Eighth Circuit Court of

Appeals.  For the reasons that follow, Judgment will be entered in favor of Glenstone

Lodge, Inc., and against Debtors Carole and Larry Treadwell on Glenstone Lodge's

Counterclaim, in the amount of $50,851.52, plus interest, with such Judgment being

nondischargeable as to both Debtors under 11 U.S.C. § 523(a)(2)(A).

## FACTUAL BACKGROUND

Because the facts in this case have been recited in detail in orders of this Court

and in decisions by the Eighth Circuit Court of Appeals and Bankruptcy Appellate

Panel, the following is a summary of the facts only as they are relevant to this remand.

Glenstone Lodge obtained a default judgment on November 21, 2006, in the

amount of $153,611.44, against Debtors Larry and Carole Treadwell, and the

Treadwell Family Revocable Living Trust, in the Chancery Court for Sevier County,

Tennessee.  Glenstone Lodge transcripted the Judgment in Taney County, Missouri,

and subsequently filed a Notice of Levy and Sheriff's Sale on the Treadwells' home

in Stone County, Missouri, based on that Judgment.

The Treadwells filed this Chapter 7 bankruptcy petition on August 27, 2008,

apparently to stop the sheriff's sale,  and brought this adversary proceeding to avoid

Glenstone Lodge's lien on their home.  Glenstone Lodge answered the adversary

Complaint, and also filed a Counterclaim, seeking a determination that the

Treadwells' Judgment debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A),

(a)(4), and (a)(6).

2

In sum, Glenstone Lodge alleged that the Treadwells, doing business as Memory Travel, arranged a trip in April 2006 to Gatlinburg, Tennessee, for several hundred members of The Red Hat Society. The trip included lodging, food, and entertainment during a ten-day stay at the Glenstone Lodge in Gatlinburg. The arrangement was for The Red Hatters to pay the Treadwells for the lodge's services, and then the Treadwells were supposed to pay Glenstone Lodge. After a very successful event there, the Treadwells absconded from the lodge without paying the bill. Glenstone Lodge sued the Treadwells and their Trust in the Tennessee state court, asserting (i) fraud pursuant to § 62-7-107(b) of the Tennessee Code; (ii) violations of the Tennessee Consumer Protection Act; (iii) conversion; (iv) breach of agreement; (v) fraud, promissory fraud, mail and wire fraud; and (vi) violation of various provisions of the Tennessee Code for stopping payment on a check they sent after the event. The lawsuit prayed for judgment in the amount of $50,000, and asked that the judgment be trebled pursuant to the Tennessee Consumer Protection Act. Glenstone Lodge also sought recovery of fees and costs, as well as punitive damages.

The Treadwells and their Trust defaulted in the Tennessee proceeding, and the Tennessee Court entered the default Judgment against them in the amount of $153,611.44, which apparently included the requested treble damages. After Glenstone Lodge transcribed its judgment in Missouri, the Debtors filed this Chapter

3

7 bankruptcy case and sought to avoid the judgment lien.

Glenstone Lodge asserted that that Tennessee Judgment is nondischargeable as to both Debtors under § 523(a)(2), (a)(4) and (a)(6). The Lodge filed a motion for summary judgment, asserting that this Court should give collateral estoppel effect to the Tennessee Judgment on the issue of nondischargeability. I entered an order denying that motion, questioning whether Tennessee law permitted the default Judgment be given collateral estoppel effect on the issue of nondischargeability in a bankruptcy case in the first place, but concluding that, even if it could, the Judgment made no findings, nor did it state under which of the alternative theories pled in the state court Complaint it was based.

Then, following a trial on the merits, I entered judgment in favor of both Debtors and against Glenstone Lodge under § 523(a)(2)(A), (a)(4), and (a)(6). Glenstone Lodge appealed as to § 523(a)(2)(A), but not as to (a)(4) or (a)(6).

On the § 523(a)(2)(A) count, as to Larry Treadwell, I found that Glenstone Lodge failed to prove that Larry knew that the event's receipts would be insufficient to pay the bill at Glenstone Lodge. Consequently, I concluded that, although Glenstone Lodge proved that he made representations about paying the bill, it failed to prove that he knew the representations were false, one of the requirements for a finding of fraud under § 523(a)(2)(A).

4

As to Carole, I found that, although Glenstone Lodge had proven all of the other elements of nondischargeability for fraud and false pretenses under § 523(a)(2)(A) (including, unlike Larry, that her representations were knowingly false), the Lodge had not met its burden of proving that it justifiably relied on Carole's misrepresentations. Because Glenstone Lodge's judicial lien impaired the Treadwells' homestead exemption, I further held that the lien should be avoided under § 522(f)(1)(A).

Glenstone Lodge appealed the decision under § 523(a)(2)(A) to the Bankruptcy Appellate Panel,[1] which affirmed in part, but reversed on the issue of justifiable reliance. Since I had found that Glenstone Lodge proved all of the other elements under § 523(a)(2)(A) as to Carole, and the BAP concluded that Glenstone Lodge had proved justifiable reliance, the BAP held that the debt was nondischargeable as to Carole under § 523(a)(2)(A). As to Larry Treadwell, the BAP affirmed the conclusion that the debt was dischargeable under the elements of § 523(a)(2)(A) because Glenstone Lodge had not proven that Larry knew the misrepresentations were false. In addition, the BAP found that Carole's liability could not be imputed to Larry under a partnership or agency theory, an issue I touched upon but had not ultimately decided

---

[1] As stated above, Glenstone Lodge did not appeal the decision under § 523(a)(4) or (a)(6).

5

because I had concluded that the debt was dischargeable as to Carole.

Glenstone Lodge then appealed the BAP's decision regarding Larry to the Eighth Circuit Court of Appeals. The Eighth Circuit reversed the BAP's decision on the question of Larry's imputed liability under a partnership theory and remanded the case to this Court for findings and conclusions on that question.

## DISCUSSION

Based on the foregoing, as it stands now, it has been determined that Carole has a nondischargeable debt to Glenstone Lodge under § 523(a)(2)(A). And, such debt is dischargeable as to Larry under all counts *except* under an imputed liability theory, which is the sole remaining question for factual determination on the merits. The amount of the debt that is to be nondischargeable has also not yet been determined.

Before getting to the imputed liability issue, however, in the decision remanding the case on that issue, the Eighth Circuit also invited me, at my discretion, to revisit the issue of the collateral estoppel effect of the Tennessee Judgment. At the Circuit's suggestion, I do so here.

### *Summary Judgment Based on Collateral Estoppel*

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] The burden on

---

[2] Fed. R. Civ. P. 56(c).

the moving party "is only to demonstrate . . . that the record does not disclose a

genuine dispute on a material fact."[3]  The non-moving party then must set forth

specific facts showing a genuine issue of material fact for trial.[4]

> The binding effect of a former adjudication, often generically termed *res
> judicata*, can take one of two forms.  Claim preclusion (traditionally
> termed *res judicata* or "merger and bar") bars relitigation of the same
> claim between parties or their privies where a final judgment has been
> rendered upon the merits by a court of competent jurisdiction.  Issue
> preclusion (or "collateral estoppel") applies to legal or factual issues
> actually and necessarily determined, with such a determination becoming
> conclusive in subsequent suits based on a different cause of action
> involving a party to the prior litigation.[5]

"[I]t is well settled that the bankruptcy courts have exclusive jurisdiction for

determination of the dischargeability of debts pursuant to 11 U.S.C. § 523(a)(2),

(a)(4), and (a)(6)."[6] Consequently, claim preclusion, or *res judicata*, is not applicable

here because the claim adjudicated in the state court did not involve any determination

of the dischargeability of debt under § 523 of the Bankruptcy Code.[7]

---

[3]  *City of Mt. Pleasant, Iowa v. Assoc. Elec. Cooperative, Inc.*, 838 F.2d 268, 273 (8th
Cir. 1988).

[4]  *Dico, Inc. v. Amoco Oil Co*., 340 F.3d 525, 529 (8th Cir. 2003)

[5]  *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997) (citations and
internal quotation marks omitted).

[6]  *Pizza Palace, Inc. v. Stiles (In re Stiles)*, 118 B.R. 81, 83 (Bankr. W.D. Tenn. 1990).

[7]  *Accord Walls v. Jones (In re Jones)*, 287 B.R. 188, 193 (Bankr. E.D. Mo. 2001); *In re
Donovan*, 255 B.R. 224, 227 (Bankr. D. Neb. 2000); *In re Nevels*, 2007 WL 2042449 at *6
(Bankr. E. D. Tenn. 2007) (not reported) ("[B]ecause the federal courts have exclusive
jurisdiction over actions to determine nondischargeability under § 523(a)(2), (4), or (6), a state

Collateral estoppel, or issue preclusion, applies in § 523 nondischargeability proceedings.[8] "When an issue related to a nondischargeability complaint may have already been decided by a state court judgment, the bankruptcy court looks to state law to determine the preclusive effect of that judgment."[9]  It will give a state court judgment preclusive effect in a bankruptcy proceeding if the judgment would preclude relitigation in other courts within the state.[10]

Under Tennessee law:

> To prevail with a collateral estoppel claim, the party asserting it must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to

---

court judgment may not be given *res judicata* effect" as to those provisions of § 523.).

[8] *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991); *In re Jones*, 287 B.R. at 193.

[9] *In re Jones,* 287 B.R. at 193 (citing *In re Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999)).

[10] *Id.  See also In re Nevels*, 2007 WL 2042449 at *6 (Bankr. E. D. Tenn. July 9, 2007) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.") (citation omitted); *In re Webb*, 2010 WL 1329260 at *3-4 (Bankr. E.D. Tenn. March 30, 2010) (holding that, in keeping with the Full Faith and Credit Statute, 28 U.S.C. § 1738, a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered).

be precluded.[11]

In addition, "in order for the doctrine of collateral estoppel to apply, the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment."[12]

Further, as the Eighth Circuit pointed out on remand here, Tennessee courts have held that "[a] judgment taken by default is conclusive by way of estoppel in respect to all such matters and facts as are well pleaded and properly raised, . . . and such issues cannot be relitigated in any subsequent action between the parties and their privies."[13] Further, "[t]he rule is that the defendant, by suffering a default judgment to be entered against him, impliedly confesses all of the material allegations of fact contained in his complaint, except the amount of the plaintiff's unliquidated damages."[14]

Thus, "[a]lthough the bankruptcy court has exclusive jurisdiction over actions to determine dischargeability, if a state court, in the course of adjudicating state law questions, also determines factual issues with standards identical to those in § 523(a),

---

[11] *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009).

[12] *Id.*

[13] *Lawhorn v. Wellford*, 168 S.W.2d 790, 792 (Tenn. 1943) (citation omitted).

[14] *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984).

9

collateral estoppel bars re-litigation of the issues by the bankruptcy court."[15]  On the other hand, "[b]ecause of [the] requirement of actual litigation of the identical element, collateral estoppel rarely applies to default judgments awarded in a nonbankruptcy forum so as to make those default judgments nondischargeable."[16] That is in part because the elements for bankruptcy nondischargeability are often not identical to those pled to meet state law standards.

Here, the Tennessee Judgment has become final, the Treadwells were parties in the earlier proceeding, and they had a full and fair opportunity to contest the issues there.  Consequently, the issues here are whether the issues to be precluded are identical to those in the earlier proceeding, whether those issues were "actually raised, litigated, and decided on the merits," and whether the issues here were "necessary to the [Tennessee] judgment."

### *The Grounds Asserted for Nondischargeability*

The Complaint here asserted nondischargeability under § 523(a)(2)(A) for fraud or false representation, § 523(a)(4) for embezzlement or larceny, and § 523(a)(6) for willful and malicious injury.  Although my findings under § 523(a)(4) and (a)(6) were not appealed by any party, the Eighth Circuit did not limit its suggestion that I revisit

---

[15]  *Heynen v. Webb (In re Webb),* 2010 WL 1329260 at *5 (Bankr. E.D. Tenn. March 30, 2010) (citing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 2213 n.10, 60 L.Ed.2d 767 (1979)).

[16]  *In re Goff*, 180 B.R. 193, 199 (Bankr. W.D. Tenn. 1995).

collateral estoppel to the § 523(a)(2)(A) issue, so I discuss all three again here.

### *11 U.S.C. § 523(a)(2)(A)*

In order to prevail on a nondischargeability cause of action for fraud under § 523(a)(2), Glenstone Lodge must prove, by a preponderance of the evidence: (1) that the Treadwells made representations; (2) that at the time they made the representations they knew they were false; (3) that they made such representations with the intention and purpose of deceiving Glenstone Lodge; (4) that Glenstone Lodge justifiably relied on such representations; and (5) that Glenstone Lodge sustained the alleged loss and damages as a proximate result of the representation having been made.[17]

A false pretense under § 523(a)(2)(A) involves an implied misrepresentation of conduct intended to create and foster a false impression.[18]

> The concept of false pretenses is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts intended to deceive. It is a series of events, activities, or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongly induced by a debtor to transfer property or extend credit to the debtor. Silence or concealment as to a material fact can constitute false pretenses. In short, false pretenses can be made in any of the ways in which ideas can be

---

[17] *See In re Ophaug,* 827 F.2d 340 (8th Cir. 1987), as supplemented by *Field v. Mans*, 519 U.S. 59, 116 S. Ct. 437, 444, 133 L.Ed.2d 351 (1995).

[18] *Merchants Nat'l Bank v. Moen,* 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999).

11

communicated.[19]

In addition, for the reasons stated previously in this case, I conclude that nondischargeability under § 523(a)(2)(A) for false pretenses requires at least some level of reliance.[20]

### *11 U.S.C. § 523(a)(4)*

In order to prevail on a nondischargeability cause of action under § 523(a)(4), Glenstone Lodge must prove that the debt was for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Glenstone Lodge does not assert here, or in the Tennessee Complaint, that a fiduciary capacity existed; rather, it asserts nondischargeability under this provision based on embezzlement or larceny. Those grounds for nondischargeability are described as follows:

> Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking.

> The required elements of embezzlement are: (1) appropriation of funds for the debtor's own benefit by fraudulent intent or deceit; (2) the deposit of the resulting funds in an account accessible only to the debtor; and (3) the disbursal or use of those funds without explanation of reason or purpose. For purposes of section 523(a)(4) it is improper to

---

[19] *In re Gilmore*, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998) (*quoted by In re Overall*, 248 B.R. at 150) (citations and internal quotation marks omitted).

[20] *See Memorandum Opinion* (Doc. #32) at 19-20.

automatically assume embezzlement has occurred merely because property is missing, since it could be missing simply because of noncompliance with contractual terms.

Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner.  As distinguished from embezzlement, the original taking of the property must be unlawful. For purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a "felonious taking of another's personal property with intent to convert it or deprive the owner of same.'"

In short, section 523(a)(4) excepts from discharge debts resulting from the fraudulent appropriation of another's property, whether the appropriation was unlawful at the outset, and therefore a larceny, or whether the appropriation took place unlawfully after the property was entrusted to the debtor's care, and therefore was an embezzlement.[21]

### *11 U.S.C. § 523(a)(6)*

In order to prevail under § 523(a)(6), Glenstone Lodge must show that the debt was for a "willful and malicious injury" as that term is defined under bankruptcy law. Willful and malicious are two distinct requirements that Glenstone Lodge, as the party seeking to avoid the discharge of the debt, must prove by a preponderance of the evidence.[22] Willfulness is defined as headstrong and knowing conduct, and malicious is defined as conduct targeted at the creditor at least in the sense that the conduct is

---

[21]  4 *Collier on Bankruptcy* ¶ 523.10[2] (15th ed. rev.)

[22]  *In re Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999) (citations omitted).

certain or almost certain to cause harm.[23]  The Treadwells must have acted with the

intent to harm Glenstone Lodge rather than merely acting intentionally in a way that

resulted in harm.[24]

### *The Factual Allegations Pled in the Tennessee Complaint*

As relevant to these bases for nondischargeability, Glenstone Lodge made the

following allegations in its Tennessee Complaint:

> 7.  Carole E. Treadwell and Larry W. Treadwell dba Memory Travel, represented themselves to Plaintiff's personnel, including Claudette Geoffrion (Director of Sales), to be agents, representatives and travel consultants of The Red Hat Society, Inc.

> 8.  These representations were made in person, as well as by fax, telephone and e-mail.

> 9.  The Red Hat Society, Inc. knew that Carole E. Treadwell and Larry W. Treadwell were holding themselves out as agents, representatives and travel consultants of The Red Hat Society, Inc. and were engaged in arranging for trips, conventions, and get-togethers for its members in the name of The Red Hat Society, Inc.

> 10.  Carole E. Treadwell and Larry W. Treadwell dba Memory Travel, either for their own account or as agents for The Red Hat Society, Inc. arranged for a trip for The Red Hat Society, Inc. members to Gatlinburg, Tennessee, and collected money from the members for the trip.

> 11.  The trip included lodging, food and entertainment at the Glenstone Lodge in Gatlinburg, Tennessee.

---

[23] *Id.*

[24] *Id.*; *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998).

12.  Carole E. Treadwell and Larry W. Treadwell dba Memory Travel, either for their own account or as agents for The Red Hat Society, Inc. requested that Plaintiff not book rooms to the individual members of The Red Hat Society, Inc. since all rooms were to be booked through Memory Travel.

13.  Carole E. Treadwell and Larry W. Treadwell dba Memory Travel, either for their own account or as agents for The Red Hat Society, Inc. brought several hundred members of The Red Hat Society, Inc. to the Glenstone Lodge in April, 2006 for a ten day stay.

14.  Carole E. Treadwell  dba Memory Travel, either for the Treadwell's [sic] own account or as agent for The Red Hat Society, Inc. approved all room charges and food orders by either signing or initialing the billings for the room charges and food orders.

15.  On April 25, 2006, Carole E. Treadwell and Larry W. Treadwell dba Memory Travel, either for their own account or as agents for The Red Hat Society, Inc. absconded from the Glenstone Lodge without paying or offering to pay any of the charges for The Red Hat Society, Inc. members as agreed.  The charges totaled over $60,000.00.

These factual allegations contain no allegation of reliance, much less justifiable reliance, a necessary element for nondischargeability under § 523(a)(2)(A).  They contain no allegation of "appropriation of funds," or wrongful taking and carrying away of anyone's "property," necessary elements for nondischargeability under § 523(a)(4).  And, they contain no allegation of "headstrong and knowing conduct" on the part of the Treadwells, or that the Treadwells acted with the intent to harm Glenstone Lodge, as opposed to merely acting intentionally in a way that resulted in harm, necessary elements for nondischargeability for willful and malicious conduct

15

under § 523(a)(6).

### *The Causes of Action Pled in the Tennessee Complaint*

Thus, I turn to the causes of action pled in the Tennessee Complaint to see if

they support the application of collateral estoppel on the issue of nondischargeability.

### *§ 62-7-107 of the Tennessee Statutes*

Paragraph 16 of the Tennessee Complaint stated:

16.  Pursuant to T.C.A. § 62-7-107(b) the actions of Carole E. Treadwell
and Larry W. Treadwell dba Memory Travel, either for their own
account or as agents for The Red Hat Society, Inc., in absconding from
the Glenstone Lodge without paying for or offering to pay for the rooms
and restaurant services they procured are deemed under Tennessee law
to be prima facie evidence of the intent to defraud Plaintiff, which is a
Class E Felony in Tennessee.

Section 62-7-107(b) of the Tennessee statutes provides:

It is prima facie evidence of intent to defraud for any person to procure
accommodations or restaurant services by false pretense or through show
or pretense of baggage, key or other property under the false pretense of
being registered at a public establishment, for any person to have
procured accommodations or restaurant services and thereafter to
abscond or surreptitiously remove or attempt to remove baggage or
property without paying or offering to pay for the accommodations or for
any person to receive restaurant services and thereafter to abscond or
surreptitiously leave the premises without paying or offering to pay for
the restaurant services.[25]

Intent is, certainly, an element of fraud under § 523(a)(2)(A).  However, all that can

---

[25] T.C.A. § 62-7-107(b).  Subparagraph (f) of this section provides that any person who,
with intent to defraud, procures accommodations in the amount of more than two hundred dollars
commits a Class E felony.

16

be taken from paragraph 16 of the Complaint, and § 62-7-107(b), is that Tennessee

law entitles Glenstone Lodge to prima facie evidence of that one element.  Reliance

is not mentioned in paragraph 16 or § 62-7-107(b) and is, therefore, still absent.

<em>The Tennessee Consumer Protection Act</em>

Paragraphs 17 and 18 of the Tennessee Complaint alleged:

> 17.  The actions of Carole E. Treadwell and Larry W. Treadwell dba
> Memory Travel, either for their own account or as agents for The Red
> Hat Society, Inc., also are a violation of the Tennessee Consumer
> Protection Act found at T.C.A. § 47-18-104(b)(3), (4), (14), and (27).

> 18.  Pursuant to the Tennessee Consumer Protection Act, Plaintiff should
> collect from the Defendants damages in the amount of three times
> Plaintiff's actual damages, plus Plaintiff's reasonable attorney fees.

As stated, and as can be seen here, it was the Judgment for violation of the Tennessee

Consumer Protection Act that resulted in the trebling of damages.  The sections of the

Tennessee statute referred to by Glenstone Lodge in the Tennessee Complaint

provide:

> (a) Unfair or deceptive acts or practices affecting the conduct of any
> trade or commerce constitute unlawful acts or practices and are Class B
> misdemeanors.

> (b) Without limiting the scope of subsection (a), the following unfair or
> deceptive acts or practices affecting the conduct of any trade or
> commerce are declared to be unlawful and in violation of this part:

* * *

> (3) Causing likelihood of confusion or misunderstanding as to

17

affiliation, connection or association with, or certification by, another. This subdivision (b)(3) does not prohibit the private labeling of goods or services;

(4) Using deceptive representations or designations of geographic origin in connection with goods or services;[26]

\* \* \*

(14) Causing confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction; [and]

\* \* \*

(27) Engaging in any other act or practice which is deceptive to the consumer or to any other person.[27]

Again, no mention is made of justifiable reliance, an appropriation or taking of "property," or intent to harm Glenstone Lodge, as opposed to merely acting intentionally in a way that resulted in harm to Glenstone Lodge.  Indeed, under Tennessee law, "[t]o be considered deceptive [under the Consumer Protection Act], an act is not necessarily required to be knowing or intentional.   Negligent misrepresentations may be found to be violations of the Act."[28] Therefore, paragraphs 17 and 18 of the Tennessee Complaint do not mandate the application of collateral

---

[26] It is not at all clear what representations or designations of geographic origin could have been made here.

[27] T.C.A. § 47-18-104(b)(3), (4), (14) and (27).

[28] *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009).

18

estoppel.

*Stop Payment on Check*

Paragraph 19 of the Tennessee Complaint alleged:

19.  On April 26, 2006 The Treadwell Family Revocable Living Trust issued a check in the amount of $20,000.00 and forwarded said check to Plaintiff as a partial payment on the account.  Before Plaintiff could cash the check, however, the Treadwell Family Revocable Living Trust issued a stop payment order on the check so it could not be cashed.  These actions are a violation of T.C.A. § 62-7-107, and T.C.A. § 39-14-121, as well as T.C.A. § 47-18-104(b)(3), (4), (14), and (27).

This paragraph makes allegations against only the Treadwell Family Trust, which is not a debtor or a defendant in this adversary proceeding.  Consequently, it cannot form the basis for collateral estoppel against the Debtors here.

*Conversion*

Paragraph 20 of the Tennessee Complaint alleged:

20.  The Defendants have converted the goods and services of the Plaintiff to their own use and for their own use and benefit without compensating Plaintiff for those goods and services.

Tennessee courts have defined "conversion" as "the appropriation of [a] thing to the [defendant's] own use and benefit, by the exercise of dominion over it, in defiance of [the] plaintiff's right."[29]  Again, reliance for fraud, and intent to harm

---

[29] *Tierney & Black, Inc. v. Siemens Power Corp.*, 79 Fed. Appx. 740, 743 (6th Cir. 2001) (citing *Barger v. Webb*, 216 Tenn. 275, 391 S.W.2d 664, 665 (1965); *Mammoth Cave Production Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. App. 1977)).

Glenstone Lodge, as opposed to merely acting intentionally in a way that resulted in harm, are absent.  Further, the Complaint does not allege that the Treadwells appropriated "funds," so embezzlement under § 523(a)(4) does not apply.

On the other hand, Tennessee law on conversion arguably sounds similar to the bankruptcy definition of larceny, which is "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner."  However, assuming that the Lodge's "goods and services" constitute "property" which can be "taken" for purposes of larceny, in order to meet the bankruptcy definition of larceny, the *original taking* of the property must be unlawful.[30]  The Treadwells' initial "taking" of the goods and services from Glenstone Lodge was lawful and, indeed, with the Lodge's express permission.  The fact that they later left without paying for the goods and services does not render the initial taking unlawful.  Bearing in mind that the allegations must be "identical,"[31] paragraph 20 of the Tennessee Complaint does not make out a basis for nondischargeability under § 523(a)(4).

---

[30] *See Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir. 1993) (holding that larceny exception could not apply because the debtors' original possession of cattle was lawful); *Sullivan v. Clayton* (*In re Clayton*), 198 B.R. 878, 884 (Bankr. E.D. Pa. 1996) (holding that larceny requires that the initial appropriation of the property of another be wrongful); *Spurgeon v. Adams* (*In re Adams*), 24 B.R. 252, 254 n.4 (Bankr. W.D. Mo. 1982); 4 *Collier on Bankruptcy* ¶ 523.10[2] (15th ed. rev.)

[31] *See In re Webb*, 2010 WL 1329260 at *5 (Bankr. E.D. Tenn. March 30, 2010) (citing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 2213 n.10, 60 L.Ed.2d 767 (1979)).

*Breach of Agreement*

Paragraph 21 of the Tennessee Complaint alleges:

21.  The Defendants have breached their agreement with Plaintiff by failing to pay for the goods and services provided by Plaintiff.

Breach of agreement is not a basis for nondischargeability under any provision of §

523.

*Fraud*

Finally, Paragraph 22 of the Tennessee Complaint alleges:

22.  The plaintiffs are guilty of fraud, promissory fraud, as well as mail and wire fraud.

The Tennessee Court of Appeals has recently said:

Under Tennessee law, in order to prevail on a claim based on fraud, a plaintiff must show the following: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity (i.e., it was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity); (3) the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, the misrepresentation "must embody a promise of future action without the present intention to carry out the promise."[32]

Tennessee courts have recognized that "the essential components of fraud under

Tennessee law are 'virtually identical' to those necessary to establish

---

[32] *McMillin v. Lincoln Memorial University*, ___ S.W.3d ___, 2011 WL 1662544 at *5 (Tenn Ct. App. May 3, 2011) (slip copy) (citations omitted).

nondischargeability under § 523(a)(2)(A)."[33]  Indeed, Tennessee requires reasonable reliance, a standard higher then § 523(a)(2)(A)'s justifiable reliance. Thus, the first element of collateral estoppel, identity of issues, is satisfied with respect to the § 523(a)(2)(A) claim.

As stated above, however, in Tennessee, a defendant who allows a default judgment be entered against him "impliedly confesses all of the *material allegations of fact contained in his complaint*"[34] and, further, a default judgment is conclusive "in respect to all such matters and facts *as are well pleaded and properly raised.*"[35]  In other words, "if a state court, in the course of adjudicating state law questions, *also determines factual issues with standards identical to those in § 523(a),* collateral estoppel bars re-litigation of the issues by the bankruptcy court."[36]  Again, reliance, a necessary element of fraud, was neither alleged as fact, nor "well pleaded or properly raised" in the Tennessee Complaint, particularly in light of the fact that in Tennessee, allegations of fraud must be pled with particularity.[37]  This Court should

---

[33]*Truepoint Bank v. Clark (In re Clark)*, 2009 WL 693164 (Bankr. E.D. Tenn. March 11, 2009) (unreported) (citation omitted).

[34] *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984) (emphasis added).

[35] *Lawhorn v. Wellford*, 168 S.W.2d 790, 792 (Tenn. 1943) (emphasis added).

[36] *In re Webb*, 2010 WL 1329260 at *5 (emphasis added).

[37] Tenn. R. Civ. P. 9.02; *McMillin v. Lincoln Memorial University*, ___ S.W.3d ___, 2011 WL 1662544 at *5 (Tenn. Ct. App. May 3, 2011) (slip copy).

not infer that the Tennessee Court found reasonable reliance when it was not factually

pled or referred to in the Judgment, and when no evidence was offered here as to what

findings the Tennessee Court may have made orally at the hearing on its default

judgment.[38] While I recognize that Tennessee Courts will give collateral estoppel

effect to default judgments, they do so on a case-by-case basis and only when the

issues were raised in the pleadings "and directly decided."[39] Consequently, because

Glenstone Lodge has not shown that reliance was raised in the pleadings and directly

decided, it has not shown that it was "actually raised, litigated, and decided on the

merits" by the Tennessee Court.

Most importantly, even if all of the other elements of collateral estoppel are

present, Tennessee law requires not only that the issue be actually litigated and

determined, but also that the determination was *essential to the judgment.*"[40] Courts

in Tennessee have held that when the prior judgment does not set forth any findings

of fact and conclusions of law, does not otherwise indicate upon which of the various

causes of action the plaintiff was being granted judgment, and the state court

---

[38] *See Powell v. Lane*, 289 S.W.3d 440, 445 (Tenn. 2008) ("In the context of collateral estoppel, 'actually litigated' means that the issue was raised in pleadings, or otherwise, that the defendant had a full and fair opportunity to be heard, and that a decision was rendered on the issue.").

[39] *Id.* at 446.

[40] *Tripoint Bank v. Clark (In re Clark)*, 2009 WL 693164 at *4 (Bankr. E.D. Tenn. March 11, 2009) (citations omitted).

complaint upon which the judgment was based includes counts other than fraud (such as breach of contract), the plaintiff's fraud claim was not necessary or essential to the judgment.[41]   Similarly, the Tennessee Judgment here does not make findings or conclusions and does not specify on which of the causes of action it is based.   And, no transcript of the default hearing was offered to show what matters were before the state court and what oral findings were made, if any.   Because the Tennessee Court could have found for Glenstone Lodge on any of the other causes of action without concluding that the Treadwells engaged in fraudulent conduct, Glenstone Lodge's fraud claim was not necessary or essential to the judgment.[42]   In fact, if anything, because the Tennessee Court awarded treble damages, it would appear most likely the judgment was made under the Consumer Protection Act, which, as discussed above, does not contain the elements for nondischargeability under any of the bases pled here.

Based on all that, I conclude that Glenstone Lodge did not show that its

---

[41] *Id.* (holding that, because the state court complaint not only asserted a claim for fraud, but also raised breach of contract, and the state court could have found for the plaintiff on the breach of contract cause of action without concluding that the debtor engaged in fraudulent conduct, the plaintiff's fraud claim "was not necessary or essential to the judgment."); *Massengill v. Scott*, 738 S.W.2d 629 (Tenn. 1987) (rejecting the application of collateral estoppel in an action involving multiple claims because "the record [did] not disclose what issues were defined and submitted to the jury for their determination and . . . the jury's verdict was only a general verdict . . . .").

[42] *Accord, id.*

Tennessee Judgment is entitled to collateral estoppel effect as to § 523(a)(2)(A), (a)(4), or (a)(6).

### *Amount of Nondischargeable Judgment*

As stated above, the debt to Glenstone Lodge has been held to be nondischargeable as to Carole under § 523(a)(2)(A), collateral estoppel notwithstanding. Hence, the next question is the amount of the nondischargeable judgment to be entered.

The Tennessee Court awarded Glenstone Lodge $153,611.44 in damages. It is not clear from the Judgment itself how that amount was calculated, but it would appear from the Tennessee Complaint, and the testimony and evidence submitted at trial here, that the actual damages were trebled under the Tennessee Consumer Protection Act. In *Cohen v. de la Cruz*, the Supreme Court held that treble damage awards can be nondischargeable as part of a "debt" which is nondischargeable under § 523(a).[43] However, in that case, the treble damages were sought pursuant to the statute under which the debtor was found to have committed fraud.[44] The Supreme Court held that the "most straightforward reading of § 523(a)(2)(A) is that it prevents

---

[43] *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998).

[44] *Id.* (applying the New Jersey Consumer Fraud Act). *See also In re Hanson*, 225 B.R. 366 (Bankr. W.D. Mich. 1998) (denying request for nondischargeable attorney fees, stating that, "[i]n *Cohen*, treble damages were sought pursuant to the New Jersey Consumer Fraud Act . . . , the statute under which Cohen was found to have committed fraud.").

25

discharge of 'any debt' respecting 'money, property, services, or . . . credit' that the debtor has fraudulently obtained, including treble damages *assessed on account of the fraud*."[45]  As one Court has said:

> While the Supreme Court held that a debtor need not 'obtain' or receive money or property fraudulently in order for a creditor to prevail under section 523(a)(2)(A), it repeatedly acknowledged that the liability must "arise from" the fraud to be nondischargeable.  All such damages, including statutory punitive damages "*assessed on account of the fraud*," escape discharge.[46]

Phrased another way, *Cohen* "stand[s] for the proposition that an underlying fraud or false representation damage can be augmented by other damages resulting from the fraud or false representation."[47]

Here, the treble damages were awarded under the Tennessee Consumer Protection Act which, as discussed above, does not form the basis for nondischargeability of even the underlying debt.  In other words, the treble damage award in this case does not augment, nor is it otherwise a part of the debt which has been found to be nondischargeable.[48]

---

[45]  *Id.* at 21, 118 S.Ct. 1212 (emphasis added).

[46]  *In re Sabban*, 384 B.R. 1, 6 (B.A.P. 9th Cir. 2008) (footnote omitted; emphasis in original).

[47]  *Tatton v. Jahke (In re Jahke)*, 2006 WL 4846384 at *4 (Bankr. D. Utah 2006); *In re Perez*, 415 B.R. 546 (Bankr. D. N.M. 2009).

[48]  *Accord, id.* (holding that, under *Cohen v. De La Cruz,* even if the debtor may have otherwise committed fraud against the plaintiffs, a state court judgment for statutory

Further, while courts have held that the doctrine of full faith and credit, codified at 28 U.S.C. § 1738, applies in bankruptcy nondischargeability proceedings and bars a court from reevaluating the amount of damages previously awarded by a state court in a default proceeding,[49] even if the Tennessee judgment were to be given collateral estoppel effect on the issue of liability and nondischargeability under § 523(a), the amount of damages in a default judgment is not necessarily subject to collateral estoppel effect under Tennessee law: "The rule is that the defendant, by suffering a default judgment to be entered against him, impliedly confesses all of the material allegations of fact contained in his complaint, *except the amount of the plaintiff's unliquidated damages*."[50]    Because the Tennessee Judgment did not say how it calculated the damages, and the treble damages are dischargeable, it is necessary to revisit that issue here for purposes of entering a nondischargeable judgment.

According to a September 7, 2006 memorandum prepared by Glenstone Lodge for the Tennessee Court and introduced into evidence at the trial here,[51] the balance owed to Glenstone Lodge as of April 30, 2006 was $49,508.54.    In addition,

---

disgorgement of a fee did not require a showing of fraud and, therefore, did not "arise from" the debtor's fraud; therefore, the award was dischargeable).

[49] *Stephens v. Morrison (In re Morrison),* 450 B.R. 734 (Bankr. W.D. Tenn. 2011).

[50] *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984); *Witter v. Nesbit*, 878 S.W.2d 116 (Tenn. App. 1993).

[51] Plaintiff's Exhibit 29.

27

Glenstone Lodge submitted evidence at the state court that attorneys' fees at that time were $1,342.98, which the Tennessee Court included in its Judgment amount. Those amounts total $50,851.52. Further, Tennessee law provides for both pre-judgment and post-judgment interest at a rate of 10%.[52] Consequently, Judgment will be entered in the amount of $50,851.52, plus interest from April 30, 2006, at a rate of 10% per annum. Following entry of this Judgment, interest will accrue at the federal rate found in 28 U.S.C. § 1961.

### *Imputed Liability as to Larry Treadwell*

Having found that collateral estoppel does not apply to make the Tennessee judgment nondischargeable as to Larry, the next question is whether the finding on the merits that the debt was nondischargeable as to Carole under § 523(a)(2)(A) can be imputed to Larry, the ultimate issue on remand.

As the Eighth Circuit pointed out, the Treadwells conceded in their post-trial brief in this Court that, if the debt was nondischargeable as to Carole, her liability could be imputed to Larry. The Debtors noted that, in *In re Walker*, the Eighth Circuit held that actual participation in the fraud by the principal is not necessarily required for imputed liability; rather:

---

[52] *See Tenn Code Ann.* §§ 47-14-123 (prejudgment interest) and 47-14-121 (interest on judgments and decrees).

28

If the principal either knew or should have known of the agent's fraud, the agent's fraud will be imputed to the debtor-principal. When the principal is recklessly indifferent to his agent's acts, it can be inferred that the principal should have known of the fraud.[53]

The Debtors further stated that, post-*Walker*, a distinction developed where the case involves actual fraud or misrepresentation of an agent acting within the scope of her employment or apparent authority, in which case it is not necessary that the debtor as principal knew or should have known of his agent's fraud.[54]  They then said:

Assuming *arguendo* that this Court finds that Debtor Carole Treadwell made false pretenses to create her debt to the Defendant, this Court may impute these misrepresentations to her business partner and co-debtor, Larry Treadwell. Although the evidence at trial established that Mr. Treadwell did not know of any alleged misrepresentations made by Debtor Carole Treadwell, this Court may impute her misrepresentations to him because they were made during the scope of employment or apparent authority.[55]

Thus, not only did the Debtors concede that Carole's misrepresentations can be imputed to Larry *per se*, they also conceded the specific factual question that Larry was Carole's business partner.

Thus, even under *Walker*'s standard for imputed liability, the only remaining

---

[53]  726 F.2d 452, 454 (8th Cir. 1984).

[54]  *See, e.g., In re Beasley*, 202 B.R. 979 (Bankr. W.D. Mo. 1996); *In re Guse*, 150 B.R. 950 (Bankr. E.D. Mo. 1993); *In re Croft*, 150 B.R. 955 (Bankr. E.D. Mo. 1993).

[55]  *Post-Trial Brief of Debtors / Plaintiffs in Opposition to the Action of Defendant for Non-Dischargeability under 11 U.S.C. § 523(a)(2)(A)* (Doc #31) at 7.

29

question is whether Larry knew, should have known, or was recklessly indifferent to Carole's fraud.

I previously held that, although it was likely Larry was aware that they did not have the money to pay the bill, there was no actual evidence of that.[56] But, as stated, the issue here is whether he should have known, or was recklessly indifferent. Both Urcella House and Rita Marshall testified that he actively participated in the planning meeting at the lodge in January 2006, as well as during the event itself, including assisting with decision-making. I previously found that Larry was not credible in his testimony that he knew nothing about any this, and I find Carole's testimony on that issue to be similarly lacking in credibility. The Eighth Circuit said in *Walker* that a debtor "who abstains from all responsibility for his affairs cannot be held innocent for the fraud of his agent if, had he paid minimal attention, he would have been alerted to the fraud."[57] Had Larry paid minimal attention, he should have been alerted to the problem here. For one thing, Carole used $10,000 of the event's deposits to pay for her mother's funeral expenses in January 2006, and those expenses were paid from their Trust's account, which was also his and Carole's account joint account. Further, Larry testified that they used that same account for the Memory Travel business. In

---

[56] *Memorandum Opinion* (Doc. # 32) at 13.

[57] *In re Walker*, 726 F.2d at 454.

other words, he had access to the bank account being used for the event.  In addition, I find that he left early with Carole, the bill having not been paid.  While Carole testified they left early due to a medical problem, neither she nor Larry offered any evidence to support that representation.  That representation, as well as his other testimony on contested issues, was not credible.

I recognize that there may be situations where a person may be wholly blindsided by a partner, even in a spousal situation, but I simply did not find the Treadwells' testimony that Carole hid from Larry their inability to pay the bill to be credible. In any event, due to his access to their joint records, he either should have known of their lack of funds, or acted with reckless indifference to that fact.  I find, therefore, that if Larry had paid even minimal attention to the situation, he would have been alerted to the fact that they were not going to be able to pay the bill at the end of the event.  Carole's nondischargeable liability is, therefore, imputed to him.

### *Lien Avoidance*

I previously ruled that Glenstone Lodge's lien on the Debtors' homestead could be avoided based on the value of the home and the amount of the secured debt on it, and the BAP affirmed that ruling.  The finding here that the debt is nondischargeable as to both Debtors does not change that result: "The dischargeability of a loan is

irrelevant to the avoidance of a lien under § 522(f)(1) and § 522(f)(2)(A)."[58]

## CONCLUSION

For the foregoing reasons, the Court finds that the debt, in the amount of $53,611.44, is nondischargeable as to both Larry and Carole under 11 U.S.C. § 523(a)(2)(A).

ACCORDINGLY, the Clerk of the Court is DIRECTED to enter Judgment in favor of Glenstone Lodge, Inc., and against Debtors Larry and Carole Treadwell, on Count I of Glenstone Lodge's Counterclaim to Determine the Dischargeability of a Certain Debt, in the amount of $50,851.52, plus interest from April 30, 2006, at a rate of 10% per annum, until the entry of this Judgment.  Following entry of this Judgment, interest will accrue at the federal rate found in 28 U.S.C. § 1961.  Such Judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  All other requests for relief are DENIED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 9/27/2011

Copy to: Kenneth P. Reynolds
          Lee J. Viorel

---

[58]  *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 423 B.R. 309, 319 (B.A.P. 8th Cir. 2010).